FRANKLIN DIBBLE, APPELLANT, VS. JOSEPH TRULUCK AND JAMES J. HOLLAND, SHERIFF, &c., APPELLEES.

1. Courts of Equity will grant relief from judgments of Courts of law in a variety of cases, as where the defense could not at the time or under the circumstances be made available at law, without laches of the party; and in cases of surprise where reasonable diligence could not avail, and where the facts constituting the surprise are tantamount to a fraud.

2. But where a party has a clear, adequate, and easy remedy at law of which he neglected to avail himself by reason of a misapprehension of well-established rules of practice; or by reason of *anticipating* obstacles which might be met with in his progress, he stops short of pursuing his remedy, he is guilty of laches which estop him from pursuing his remedy in Equity.

3. As, where a party may have the benefit of a bill of exceptions, but neglects to avail himself of it, a Court of Equity will not step in to perform the legitimate office of such bill of exceptions.

Appeal from the order of Hon. A. A. Knight, Circuit Judge Fourth District.

The case is stated in the opinion of the Court.

*H. Bisbee, Jr.*, for Appellant.

*J. M. Baker* and *A. R. Meek* for Appellee.

By the Court.

RANDALL, C. J.   This is a suit by Bill in Equity to obtain an injunction restraining Joseph Truluck from enforcing a judgment and execution in his favor against the appellant, and to

24

restrain and prohibit Holland, Sheriff of Duval county, from enforcing such execution, and for general relief.

The bill was filed in the Circuit Court for Duval county on the 5th day of September, 1868, and alleges that on or about the 10th day of October, 1866, Joseph Truluck obtained a judgment, upon the verdict of a jury, against the complainant, for three hundred dollars, in an action of replevin to recover the possession of a mule; that at the trial, the complainant (defendant in the suit) proved that he was the legal owner of the mule, having purchased the same of the United States government, the government having acquired a title thereto by capture during the war as prize or booty, and that no attempt was made to show that it had been recaptured.

It is further alleged that the party Truluck was the person from whom the mule was captured, while he was domiciled in the "Confederate States," and adhered to the Confederate government, and that he based his right of recovery in the replevin suit upon his ownership before the capture.

That upon the trial the Judge instructed the jury that if they found from the evidence that the mule in question was prize or booty of war, then the defendant was entitled to a verdict in his favor; but that if the jury found from the evidence that the mule in question was the property of the plaintiff at the time the suit was commenced, then the plaintiff was entitled to a verdict in his favor.

That the jury disregarded the evidence in the cause, and the charge of the Judge, and rendered a verdict in favor of the plaintiff Truluck, and against the defendant Dibble, for three hundred dollars.

That during the same term the defendant applied for a new trial, on the grounds that "the verdict was contrary to the evidence, and was excessive, unreasonable, and exorbitant."

"That the Judge overruled the motion, on the ground that he had not taken down the evidence, and did not know what it was, and that it was not his duty to know the evidence, and

Franklin Dibble vs. Joseph Truluck and James J. Holland—Opinion of Court.

that he could not take any notice of the evidence, or assume to say what the evidence was, unless the counsel of the respective parties to the said action could agree upon the same." That the counsel could not agree upon the evidence, and that in consequence of the said Judge's omission and neglect of his duty to take down the evidence, or to pay such attention to it as would enable him to know what it was, complainant was deprived of a new trial, and was precluded from submitting to the Supreme Court, by appeal, the legal questions whether or not the verdict was contrary to the evidence in the case; that he did not and could not by himself, or through counsel, make up a Bill of Exceptions including the evidence, and procure the same to be signed by three bystanders, as provided by statute, because bystanders could not be procured for that purpose.

That an appeal was taken to the Supreme Court "upon the question of the duty of the Judge to know the evidence," and the Supreme Court distinctly and pointedly decided that it was the duty of the Judge of the Circuit Court to know what the evidence was, by taking minutes or paying attention to it, so that he could correctly charge the jury and correctly decide upon a motion for a new trial; and because the evidence was not before them in consequence of the omission of the Judge, the Court could not pass upon the correctness of the verdict.

That the complainant had a clear legal and conscientious title to the property, and that without any fault, negligence, or want of care and diligence on his part, he has been deprived of his rights and his legal title; "and that by the failure, omission, and disregard of the said Judge to do his duty as decided by the Supreme Court, he is in danger of being grossly wronged and injured, and has been deprived of his right to have the legal title to his property judicially determined and decided;" and "that from the neglect and omission or failure of the said Judge to perform his duty, a fraud has been perpetrated upon his rights;" and that the defendant Holland, Sheriff of Duval county, has levied upon his property to satisfy an execution

issued upon such judgment; wherefore the complainant prays an injunction, as before stated.

Upon the filing of this Bill the complainant moved for a preliminary writ of injunction, and the Judge of the Circuit denied the motion; and from the order denying a preliminary injunction the complainant appeals.

It is unnecessary to consider whether the complainant had a valid defense in the replevin suit, or how clear his case may have been, unless we find that he is driven into the Court of Chancery by some legal necessity; but assuming that he had such defense, we must next ascertain whether by his Bill he is entitled to this resort.

"Courts of Equity will grant relief against judgments at law when the defense could not at the time or under the circumstances be made available at law without any laches of the party;" and also, "when a party is taken by surprise, and could not by reasonable diligence have protected himself from the consequences of such surprise; or when the *facts* constituting such surprise are tantamount to a fraud, Equity will grant relief."

Equity will relieve in many cases against a judgment which is clearly against conscience; and against the consequences of fraud and circumvention; and where the party has been misled by the opposing party or his privies; and in divers other circumstances, as urged by the complainant's counsel, and sustained by authorities cited by him.

But we must first ascertain whether the party praying such relief has either exhausted his remedy, or been deprived of it in the court of law by fraud, or by impediments thrown in his way by other parties, and without laches of his own. When this case was before this Court on a former occasion, the Judge who delivered the opinion pointed out very clearly (XI. Fla. R., 137, 138, 139) the practice proper to be observed in order to obtain a proper review of the case upon its merits. (See also Thompson's Dig., 351, and Laws of 1852–3, p. 100.) The party desir-

Franklin Dibble vs. Joseph Truluck and James J. Holland—Opinion of Court.

ing to review a judgment after verdict, is authorized and re-quired to make his motion for a new trial in writing, stating the reasons therefor, and obtain the decision of the Judge thereon. So far this requirement was pursued, and the Judge refused to grant a new trial upon the grounds stated in the motion. The party was then authorized and required to prepare his case and exceptions, and on notice to the other party, ask the Judge to sign the same. If the Judge then refuses to sign or take notice of the case, three bystanders may be called upon to sign the same, and attest the fact of such presentation and refusal, and then the bill is complete, and may be filed and become a part of the record.

It appears by this bill that the complainant stopped short upon the refusal to grant a new trial, and *made no attempt* to prepare and present his bill of exceptions, but appealed from the *opinion* of the Judge "that it was not his duty to keep minutes, or to know what the evidence was," which he had just listened to. The Judge was under no obligation to furnish counsel with minutes of testimony, but he did know what pro-ceedings had been had in his presence, otherwise he did not act intelligently. His real or pretended ignorance of the facts, however, did not prevent the party from preparing and perfect-ing his bill of exceptions, and tendering it to the Judge for signature.

No fraud was perpetrated, he was not hindered or prevented from exercising due diligence, was not misled, nor was the con-duct of the Judge such as to cause a *legal* "surprise," whatever other emotion may have been excited by it.

The omission, therefore, of the complainant to pursue his rem-edy at law, which was complete, is not excused by anything that transpired, and this omission alone prevented his accom-plishing by an appeal in that case precisely what he seeks in the prosecution of this bill.

We are therefore of opinion that the order appealed from should stand.